**Charles R. CARABELLO, Plaintiff,**

v.

**CROWN CONTROLS CORPORATION, Defendant.**

**Civ. A. No. 86–K–347.**

United States District Court, D. Colorado.

May 7, 1987.

---

ant Crown Controls. Plaintiff filed suit in February of 1986 alleging claims of strict products liability, negligence, breach of implied warranty, and breach of express warranty against Crown. The claims stemmed from an injury incurred by plaintiff in August of 1982 involving a forklift designed, manufactured, and sold by Crown.

Defendant initially moved for summary judgment on the basis that plaintiff's claims were time-barred by various statutes of limitations. Plaintiff has responded in opposition to the summary judgment motion with two separate arguments. First he claims he was mentally incompetent during the intervening three and one-half years, thus tolling the statute of limitations for the products liability and negligence claims. Second, he claims the warranties provided for the forklift were explicitly for future performance, thus altering the start of the limitations period on both warranties claims. I will address each set of claims and responses in turn.

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining the existence of any genuine issue of material fact, the record is construed in the light most favorable to the party opposing the motion. *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir.1980). However, the adverse party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

Warren B. Bosch, Patricia A. Pritchard, Denver, Colo., James A. Branch, Jr., Albuquerque, N.M., for plaintiff.

John C. McClure, Eric J. Besch, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This diversity action is before me on a motion for summary judgment by defend-

I. *Product liability and negligence claims*

Both parties have presented me with affidavits respectively supporting and rebutting plaintiff's claim of mental incompetence during the relevant period. To determine if plaintiff's condition operated to

toll any limitations period on bringing suit, I must first look to the statute of limitations applicable at the time of plaintiff's injury.

■ 1973 C.R.S. 13–80–127.5(1), until revised, provided for actions against manufacturers and sellers of defective products to be brought within three years after the claim for relief arises. 1973 C.R.S. 13–80–108(1) considers a plaintiff's causes of action to accrue on the date when both the injury and its cause are known or discovered, or should have been known or discovered by the exercise of reasonable diligence. No question of fact exists from the language in plaintiff's complaint and from deposition testimony that plaintiff should have at least made cursory investigation into the cause of the injury within an acceptable period of time from the date of the accident. His failure to do so with reasonable diligence operated to time-bar his present claims.

Plaintiff, however, has expended his strongest arguments toward leading me to apply subsection (2) of 1973 C.R.S. 13–80–127.5 which tolls the limitations period if the claimant is mentally incompetent at the time the cause of action accrues. That subsection allows for claims to be brought after the disability is removed.

Definition of the term "mental incompetent" is governed in general by 1973 C.R.S. 27–10.5–135(1). That section makes reference to three other state statutes: C.R.S. 16–8–101 defining "insane" persons; C.R.S. 27–10.5–102 defining "mentally retarded" or "developmentally disabled" persons; and C.R.S. 27–10–102 defining "mentally ill" or "gravely disabled" persons.

Plaintiff makes no pretense to fit into the first two categories, or the first part of the third category, nor could I reasonably find he has done so. Nothing in plaintiff's affidavits and briefs allow me to recognize that plaintiff, at the time of his injury was "so diseased or defective in mind ... as to be incapable of distinguishing right from wrong.." as defined in 16–8–101. Nor was plaintiff "a person whose intellectual functions have been deficient since birth or whose intellectual development has been

arrested or impaired by disease or physical injury to such an extent that he lacks sufficient control, judgment, and discretion to manage his property or affairs or who ... requires protection, supervision, guidance, training, control, or care ..." as defined in 27–10.5–102(8). Correspondingly, neither is it demonstrated plaintiff was "of such mental condition that he is in need of medical supervision, treatment, care, or restraint" as defined by 27–10–102(7).

Plaintiff seems to be demanding most strenuously that a genuine question of fact exists as to whether he was "a person, (who) as a result of mental illness, (was) unable to take care of his most basic personal needs, or (was) making irrational or grossly irresponsible decisions concerning his person and lack(ed) the capacity to understand this is so ...", i.e. one "gravely disabled" as defined by 27–10–102(5).

Plaintiff has provided me with affidavits from a psychiatrist and a psychologist. Their evaluations resolve that, at the time of his injury through 1985, plaintiff was sufficiently mentally impaired so as to be unable to take care of normal routine business matters, unable to handle normal routine affairs involving daily living, and otherwise incapable of formulating and making reasonable decisions concerning events taking place in his life during a period of time intriguingly coincidental with that period governed by the statute of limitations.

I make no pretense to have the need or ability to judge the mental competency or incompetency of plaintiff at this stage in the proceedings, nor would determination of the summary judgment motion before me be the correct vehicle by which to do so. At this point, it is not the place of this court to weigh conflicting expert testimonies as to plaintiff's mental capabilities over the past four years.

It has been held that determination of whether parties may be involuntarily committed under the auspices of the mental incompetency definitions involves mixing medical and social or legal judgments. *People v. Taylor*, 618 P.2d 1127, 1133 (Colo.1980). Part of the legal judgment involved concerns whether a plaintiff has

even alleged sufficient facts to be considered eligible to be protected by the umbrella of the mental incompetency definitions. Additionally, I do retain both the need and the ability to prevent parties before this court from divinely constructing factual disputes which it is apparent have small basis in reality.

Plaintiff was working competently at his job at the time of the accident. Plaintiff hired an attorney and petitioned for the dissolution of his marriage in 1984. During the divorce proceeding he also petitioned for custody and visitation rights of his children. Plaintiff was competent enough to file a workman's compensation claim after the 1982 injury. A guardian was never sought nor appointed to handle plaintiff's affairs, nor was he under the constant supervision of a treating psychiatrist. Clearly, at the time of the accident and throughout the relevant time period, plaintiff was very much in control of his legal and personal affairs.

Mere disability alone, even in conjunction with mental illness, has been held insufficient to warrant involuntary commitment under the definitions with which the parties are concerned. *Taylor* at 1134. For purposes of the definition, the disability must arise as a *result* of the mental illness, and must be so grave that the person's safety is threatened by his inability to take care of his basic personal needs. *Id.* None of the tests for mental incompetency have been satisfied in light of the facts presented me concerning plaintiff's activities. I find, therefore, that the claims of products liability and negligence are barred by statutes of limitations and Crown's motion for summary judgment on these claims must be granted.

## II. *Warranty claims*

Though recently revised, the statute of limitations governing plaintiff's breach of implied and express warranties claims provided for the causes of action to be brought within four years from tender of delivery of the goods under 1973 C.R.S. 4–2–725(1) and (2). Subsection (2) provides that accrual of the cause of action occurs at delivery regardless of the aggrieved party's lack of knowledge of the breach, except where a warranty "explicitly extends to future performance of the goods." In that situation the cause will accrue instead when the breach is or should have been discovered.

■ Facts alleged by both parties demonstrate that the forklift causing the injury must have been delivered much more than four years from the institution of this suit. Plaintiff attempts to escape the statute of limitations period by invoking the "future performance" exception. By simple definition, however, an implied warranty cannot "explicitly" extend to future performance. Plaintiff's breach of implied warranty is thus patently time-barred.

■ Alternatively, facts provided me by Crown demonstrate that their obligation under the warranty was expressly limited to repair or replacement of any part of the forklift determined by Crown to be defective during the applicable warranty period. The warranty at issue is straightforward. There is no explicit extension of the warranty to future performance of the forklift. Plaintiff attempts to circumvent that obstacle by finding an explicit warranty for future performance somehow sprung full-blown from maintenance instructions in the service manual for the forklift.

A plain reading of 4–2–275 makes obvious that plaintiff's attempt is unavailing. A service manual's admonition to check bearing lubrication every 250 hours cannot possibly be reasonably construed to bind a manufacturer legally by constituting an express promise that the unit itself will perform in the future. The statements do not constitute express guarantees of successful results, do not include special consideration, and do not create a special contract between the parties. *Townsend v. Kiracoff*, 545 F.Supp. 465, 469 (D.Colo.1982).

I find no genuine question of fact exists concerning the existence of an express warranty covering future performance of the forklift in question. A claim for breach, therefore, cannot stand.

IT IS THEREFORE ORDERED that defendant Crown's motion for summary judg-

ment on plaintiff's strict products liability, negligence, breach of implied warranty, and breach of express warranty claims is GRANTED.